# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RAVARINO, et al., | ) | |
| *Plaintiffs*, | ) | |
| | ) | 3:21-CV-1658 (OAW) |
| v. | ) | |
| | ) | |
| VOYA FINANCIAL INC., et al., | ) | |
| *Defendants*. | ) | |
| | ) | |
| | ) | |

### <u>ORDER GRANTING IN PART MOTION TO DISMISS</u>

This action is before the court upon Defendants' Motion to Dismiss and their supporting memorandum ("Motion").  *See* ECF Nos. 20 and 20-1.  The court has reviewed the Motion, Plaintiffs' opposition to the Motion, *see* ECF No. 47, Defendants' reply in support of the Motion, *see* ECF No. 48, all notices of supplemental authority and exhibits attached thereto, *see* ECF Nos. 49, 50, 54, 55, and 56, Plaintiffs' response to one of those notices of supplemental authority, *see* ECF No. 50,[1] and the record in this matter and is thoroughly apprised in the premises.[2]  For the reasons discussed herein, the court **GRANTS in part** the Motion.[3]

---

[1] To the extent any of these notices of supplemental authority or the response thereto have presented new arguments not included in the parties' briefs, the court has disregarded those arguments.

[2] The court also reviewed and carefully considered the amicus brief filed by the Chamber of Commerce, *see* ECF No. 27, but has not relied upon it in determining the appropriate disposition of the Motion.

[3] The court finds that the briefs are thorough and complete and that there is no need for oral argument on the Motion.  Therefore, the request for oral argument is denied.  *See* D. Conn. L. Civ. R. 7(a)(3) ("Notwithstanding that a request for oral argument has been made, the Court may, in its discretion, rule on any motion without oral argument.").

## I.   BACKGROUND

Under the Employee Retirement Income Security Act ("ERISA"), qualified employee benefit plans are subject to a number of statutory protections designed to safeguard employee retirement funds, including, as relevant here, provisions prohibiting certain self-interested transactions and provisions requiring plan fiduciaries to exercise both a duty of prudence and a duty of loyalty when administering employee retirement benefit plans.  This case arises from the alleged improper management of the Voya 401(k) Saving Plan (the "Plan") since December 2015 (the "Relevant Period") in contravention of these provisions.

Defendant Voya Financial, Inc. ("Voya Parent"), is a financial planning company. Plaintiffs are participants in the Plan, a retirement benefit (subject to ERISA requirements) offered by Voya Parent to its employees.[4]   ECF No. 1 at 5.  All other named corporate defendants are companies wholly owned (directly or indirectly) by Voya Parent. Defendant Voya Retirement Insurance and Annuity Company ("Voya Recordkeeper") is a subsidiary of Voya that during the Relevant Period performed the role of recordkeeper for the Plan.  *Id.* at 5–6.   Voya Recordkeeper is the issuer of a group annuity contract with the Plan, which contains a stable value investment option (the "Voya Stable Value Option") also at issue in this action.  *Id.*  at 6.  Defendant Voya Institutional Trust Company ("Voya Trustee") was, for some of the Relevant Period, the Plan trustee.  *Id.*  Defendant Voya Investment Trust Company ("Voya Advisor") was the investment advisor for certain funds in which the Plan invested during the Relevant Period.  *Id.*  And Defendant Voya

---

[4] The Plan is sponsored by Voya Services Company, which is a subsidiary of Voya Parent and which is not a party to this action.

Investment Management Co. LLC ("Voya Stable Value Manager") is another subsidiary of Voya Parent that manages the Voya Stable Value Option. *Id.* at 7.

Defendant Administrative Committee is the Plan administrator and a named fiduciary of the Plan. *Id.* Defendant Investment Committee (together with the Administrative Committee, "Committees") is responsible for Plan investments and also is a named fiduciary for the Plan. *Id.*

Additionally, Plaintiffs assert claims against the individual members of the Administrative and Investment Committees, as well as against some of the corporate defendants' individual employees (whose identities are unknown at this time, and thus who are named as "Does 1–30" in the complaint). *Id.*

Plaintiffs filed this action in federal court in December 2021. ECF No. 1. Broadly speaking, Plaintiffs claim that Defendants (1) have failed to establish and to follow a prudent and loyal process for monitoring plan funds and administrative fees, and (2) have engaged in prohibited transactions. Defendants timely filed the Motion, asserting that all claims must be dismissed for failure to state a cognizable claim.

## II.    LEGAL STANDARD

It is axiomatic that an action must be dismissed where the facts alleged in the complaint are insufficient to state a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To avoid dismissal under Rule 12(b)(6), a party must plead "enough facts to state a claim to relief that is plausible on its face," and not merely "conceivable." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When reviewing a motion to dismiss, the court must accept as true all factual allegations in the complaint

and draw all reasonable inferences in the nonmovant's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). "[C]ourts may draw a reasonable inference of liability when the facts alleged are suggestive of, rather than merely consistent with, a finding of misconduct." *Id.* (citing *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 121 (2d Cir. 2013)).

## III.   DISCUSSION

Plaintiffs have asserted four ERISA claims against all corporate and individual defendants: in Count One, they allege that Defendants breached their fiduciary duties; in Counts Three and Four, they assert that Defendants engaged in prohibited transactions with other parties-in-interest (Count Three) and for their own benefit (Count Four); and in Count Five,[5] they assert a claim for co-fiduciary liability. Count Two asserts an additional ERISA claim against Voya Parent alone for its alleged failure to properly monitor fiduciaries. Plaintiffs purport to bring all these claims on behalf of a class of Plan participants.

### A.  Breach of Fiduciary Duties

An ERISA fiduciary must discharge all fiduciary obligations in the sole interest of plan participants and beneficiaries. ERISA holds that fiduciaries must act (1) only for the purposes of providing benefits (to participants and to beneficiaries), and of defraying expenses of the plan, (2) with the "care, skill, prudence, and diligence" that a prudent person would exhibit, (3) by diversifying a plan's investments (unless diversification would be imprudent), and (4) in accordance with plan documents. 29 U.S.C. § 1104(a). Notably,

---

[5] The complaint lists this as a second Count Four, but the court will refer to it as Count Five.

the duty of prudence includes "a continuing duty to monitor investments and remove imprudent ones . . . ." *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015).  "To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege facts which, if true, would show that the defendant acted as a fiduciary, breached its fiduciary duty, and thereby caused a loss to the plan at issue." *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 730 (2d Cir. 2013).  "[A] prospective plaintiff must show, through reasonable inferences from well-pleaded facts, that the fiduciary's choices did not meet ERISA's requirements." *Id.* at 720.

Participants in the Plan during the Relevant Period were able to choose from numerous investment options.  *See* ECF No. 20-1 at 4.  Plaintiffs allege unlawful conduct arising from several of these investment options: the Voya Stable Value Option; the suite of Voya target date funds; the Voya Small Cap Growth Trust Fund; the Voya Real Estate Fund; the Cohen and Steers Real Asset Multi-Strategy Fund; and the Brown Advisory Small-Cap Growth Equity Portfolio (all together, the "Contested Investments").  Plaintiffs assert that Defendants violated ERISA by maintaining all these Contested Investments when superior alternatives with better returns and lower fees were available.  With respect to the Voya Stable Value Option, Plaintiffs also assert that Voya Recordkeeper consistently and improperly retained a certain percentage of the gains made and charged the Plan excessive fees for its recordkeeping services.  Finally, Plaintiffs assert that some of these investments (all Voya financial products) were imprudent and disloyal because they were offered for the improper purpose of benefitting Voya companies.  Plaintiffs further allege that Defendants failed to monitor and to contain the Plan's (overall, and investment-level) costs.

Defendants assert that all claims in the complaint must be dismissed. Regarding Count One, while their arguments vary with respect to each of the Contested Investments, Defendants generally allege a combination of lack of standing and failure to state a claim, arguing that (1) Plaintiffs allege incorrect facts and have misstated fundamental terms of the relevant Plan contracts, (2) although Plaintiffs claim that the Plan investments performed worse than other comparable investments, they fail to show that their proffered benchmark investments in fact are comparable, and (3) Plaintiffs cannot show a breach of fiduciary duty based upon hindsight data reaching back only five years. They further argue that because Count One fails, and because the corporate Defendants are not fiduciaries with respect to the actions alleged, the remaining Counts must be dismissed.

The court will address each of the Contested Investments individually.[6]

### 1.   *Voya Stable Value Option*

It is undisputed that during the Relevant Period, the Plan offered the Voya Stable Value Option through a group annuity contract that was issued by Voya Recordkeeper. Broadly speaking, money invested in the Voya Stable Value Option was placed into an account managed by Voya Stable Value Manager. Voya Stable Value Manager invested the funds in this account, realized a return on those investments, and then credited back a portion of that return to the Plan participants who invested in it.

Plaintiffs assert that the Voya Stable Value Option gave rise to breaches of fiduciary duties in several ways. First, Plaintiffs allege that Voya Recordkeeper

---

[6] "In every case charging breach of ERISA fiduciary duty . . . the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether the person was acting as a fiduciary (that is, was performing a fiduciary function)." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). The court acknowledges that there is some dispute as to which defendants are fiduciaries with respect to which functions they performed. However, in this case, the court finds it more efficient to first address the substance of Plaintiffs' claims with respect to each Contested Investment.

improperly generates revenue from Plan assets by setting the crediting rate at far less than the actual return and retaining the difference (the "spread"), which far exceeds its actual administrative costs.  Second, Plaintiffs allege that Defendants improperly offered the Voya Stable Value Option when there were better stable value investment options available in the market. [7]  The court will address each argument in turn.

a. _Spread/Crediting Rate_

The complaint is somewhat unclear as to the particular scheme by which it alleges Voya Recordkeeper retains profits from the Voya Stable Value Option.  Plaintiffs first assert that the Voya Stable Value Option is a *separate* account managed by Voya Stable Value Manager.  ECF No. 1 at 14.  However, immediately thereafter, they allege that Voya Recordkeeper deposits the Plan funds into Voya Parent's *general* account.  *Id.* Then they refer to Voya *Recordkeeper's* general account, *id.*, and they even attach information relating to Voya Recordkeeper's general account, *see* ECF No. 1-3.  But then they assert that Voya *Parent's* financial outlook relies largely on the health of the Voya *Parent* general account.  ECF No. 1 at 14.  Plaintiffs also attach to the complaint an exhibit clearly stating that funds invested in the Voya Stable Value Option are held in a *separate* account.  ECF No. 1-2.  So, it is unclear exactly how Plaintiffs establish this alleged scheme.

Plaintiffs also claim that Voya Recordkeeper "selects" a crediting rate at least every six months, which crediting rate can be 0%.  ECF No. 1 at 15.  They further assert that

---

[7] Plaintiffs also note a discrepancy between disclosures to the participants and publicly-filed documents relating to the Voya Stable Value Option, but they do not rely upon those for any distinct claim.  Rather, they footnote that the discrepancies are indicative of a lack of appropriate procedural safeguards.  They do not further explain what the disclosures have to do with the process for selecting and retaining investment options, though, and so the court finds that the alleged discrepancies do not add any appreciable weight to any of the claims alleged here.

the crediting rate Plan participants enjoy is a fraction of the return Voya *Parent* realizes on its general account investments, and that Voya *Parent* keeps the difference between the return on general account investments and the amount credited back to Plan participants. From this spread, Plaintiffs allege, Voya *Recordkeeper* reimburses itself and makes a significant profit for itself.  *Id.* at 16.  Those retained funds, Plaintiffs contend, directly reduce participants' retirement benefit, and far exceed any bona fide cost of managing the Voya Stable Value Option.  Plaintiffs assert that the annuity contract essentially allows Voya Recordkeeper to unilaterally decide how much Plan participants will get by way of a return on their investment.

Defendants respond that Plaintiffs fundamentally misunderstand and misrepresent the Voya Stable Value Option.  Defendants assert that the Voya Stable Value Option is a separate account investment, so any funds invested through the Plan in the Voya Stable Value Option go into a separate account, and the crediting rate is calculated from a formula laid out in the contract document (not unilaterally, as Plaintiffs suggest).  Defendants attach the relevant annuity contract in support of their assertion.  Plaintiffs respond that they had not seen the annuity contract prior to filing the complaint, and that Defendants raise issues of fact inappropriate to the motion-to-dismiss phase of litigation.

The court acknowledges that it is bound to accept Plaintiffs' factual allegations as true when resolving the Motion, and generally must confine its review to the complaint itself.  However, it is well-settled that when disposing of motions to dismiss, courts are permitted to consider extrinsic documents that are integral to the complaint, either because the documents are incorporated by reference or because the complaint relies heavily upon the terms and effects of the extrinsic documents.  *See Chambers v. Time*

*Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Here, Plaintiffs explicitly refer to the annuity contract in the complaint, alleging that "[u]nder the [annuity contract]," Voya Recordkeeper takes Voya Stable Value Option funds and deposits them in Voya Parent's general account, ECF No. 1 at 14, and that the annuity contract "effectively enables [Voya Recordkeeper] to determine how much interest it will credit," *id.* at 16. The court therefore finds that the annuity contract itself is so integral to Plaintiffs' claims that it may be considered along with the complaint.

Review of that annuity contract indicates that Plaintiffs' claims regarding the crediting rate are ill-stated. Plaintiffs appear to allege that the annuity contract itself allows Voya Recordkeeper to set the crediting rate at random (although they note in their opposition to the Motion that they had not seen the annuity contract before filing the complaint). However, the contract contains a formula that aims to dictate how the crediting rate is set, belying Plaintiffs' claim. And Plaintiffs do not allege that Voya Recordkeeper is miscalculating the crediting rate, or that the formula itself is self-serving, or even that the amounts actually credited to participants is less than the crediting rate requires.

Given the lack of clarity and cohesion with respect to how Defendants allegedly effected their scheme to retain the spread from the Voya Stable Value Option, and the discrepancy between the annuity contract terms and Plaintiffs' allegations related thereto, the court must conclude that Plaintiffs have failed to adequately state this claim.

b. *Superior Investments*

To support their contention that superior investment options were available that Defendants should have offered Plan participants in lieu of the Voya Stable Value Option,

Plaintiffs point to the average crediting rates for capital preservation retirement plan investment products, as reported by the Stable Value Investment Association.  From the years 2013 through the year 2020 the comparison clearly shows that the crediting rate for the Voya Stable Value Option was lower than the average for each of those years (between .01% and .43% lower than the average).  Plaintiffs also point to two allegedly comparable stable value funds that, despite charging less in administrative fees, outperformed the Voya Stable Value Option in the past one-, three-, and five-year periods.

But the court cannot reasonably infer from this information that Defendants' investment decisions were imprudent or disloyal.  While retrospective performance information sometimes can carry an ERISA claim past a motion to dismiss, the data provided only shows that (1) the Voya Stable Value Option had a lower-than-average crediting rate, and (2) there were two other funds that had better returns with lower fees. Neither of these facts, either individually or in combination, shows that investment in the Voya Stable Value Option was imprudent.  The lower crediting rate does not necessarily correlate to lower returns; if the Voya Stable Value Option vastly outperformed the average, then the lower crediting rate still presumably would yield superior returns overall. And the fact that two funds, out of multitudes, had better returns with lower fees, does not show that the Voya Stable Value Option was underperforming, generally.

Defendants' motion therefore must be granted as to the Voya Stable Value Option.

### 2. *Voya Target Date Funds*

Target date funds are designed to allocate assets to investments based upon an individual's projected retirement date.   The Voya Target Date Funds are the Plan

participants' default investment option.  During the Relevant Period, they were the only target date funds offered.  Voya Advisor was their investment advisor.

Plaintiffs assert that Defendants imprudently maintained the Voya Target Date Funds despite their poor performance.  They further assert that the Plan is the *only* investor in the Voya Target Date Funds, indicating that they are regarded poorly within the industry.  Plaintiffs assert that there were other, better options for such a big investor as the Plan, and they provide data that indicates that even other Voya target date products (which were not offered to Voya employees) outperformed the Voya Target Date Funds.

But here again, Plaintiffs' proffered data does not support an inference of imprudence or infidelity.  In their complaint, Plaintiffs note that since 2012, the Voya Target Date Funds have underperformed 25–45% of peer funds, but this means that they have consistently done better than average.  The mere fact that they have not performed as well as two other funds does not indicate that they were a poor investment.

Furthermore, Plaintiffs appear to accept Defendants' assertion that the Voya Target Date Funds are designed specifically for the Plan and are not offered to any other investor in the market, thus explaining why the Plan is the only investor.  They counter that this fact might be because Defendants cannot market such an unattractive investment to anyone other than the "captive" Plan participants.  Still, absent any indication that the Voya Target Date Funds truly were poor investments (as seems unlikely, given Plaintiffs' own concession these funds outperformed the average), this argument is mere speculation.

Thus, the court concludes that Defendant's Motion must be granted with respect to the Voya Target Date Funds, as well.

### 3. *Voya Small Cap Growth Trust Fund*

Plaintiffs also assert that Defendants imprudently have maintained Plan assets in the Voya Small Cap Growth Trust Fund although it, too, was underperforming. Plaintiffs point out that the Voya Small Cap Growth Trust Fund had underperformed compared to its benchmark since 2012, yet Defendants added it to Plan options in 2017. Two years later, 100 other investors exited the Voya Small Cap Growth Trust Fund. Yet the Plan continued to invest in the Voya Small Cap Growth Trust Fund until 2020.

The court finds that Plaintiffs have adduced sufficient facts from which it reasonably can be inferred that Defendants breached their fiduciary duties in offering a Voya proprietary product despite its consistent underperformance. The investment option was added to Plan offerings after it already had underperformed its benchmark for five years, and it continued to underperform for several years afterward, to the point where there was a mass exodus of investors from the fund in 2019. Yet the Plan did not abandon the fund for several months or one year after that.[8] From these facts, a breach of the duty of prudence may be inferred. And from the fact that the imprudent investment was a Voya proprietary product, a breach of the duty of loyalty may be inferred. The Motion is denied with respect to this claim. This claim may proceed against the Committees,[9] as they appear to be the only parties involved with this investment.[10]

---

[8] The parties dispute the length of time between the exodus of other investors and the fund's removal from Plan options, but the court finds this detail immaterial to the analysis.

[9] The Motion does not discuss the individual Doe defendants at all, and so the court will not address the merits of any of the claims as to those parties.

[10] While it is reasonable to infer that the Investment Committee selected this investment, and that the Administrative Committee executed whichever contracts were necessary to offer the investment to Plan participants, it is not stated with whom they contracted, and so it is not clear whether any of the other defendants were involved in this investment's offer or service.

4.   *Voya Real Estate Fund*

Plaintiffs next argue that Defendants breached their fiduciary duties by maintaining the Plan's investment in the Voya Real Estate Fund, despite the Voya Real Estate Fund underperforming its benchmark for the entirety of the time the Plan offered it to participants (until 2019, when it was no longer offered in the Plan).  Further, Plaintiffs contend that the Voya Real Estate Fund charged the Plan excessive fees: 92 basis points. Plaintiffs compare this with the Fidelity Real Estate Index Fund, which charged only seven basis points and outperformed the Voya Real Estate Fund in the last one-, three-, and five-year periods.

The court cannot infer from this information that Defendants have breached their fiduciary duties by maintaining this investment option in the Plan.  With respect to the fees charged, all Plaintiffs have shown is that the Voya Real Estate Fund charged more than the fees of one other fund.  This does not show that the charge was excessive or even out of the norm.   And while an ERISA claim may be carried by comparison to a benchmark, the underperformance must be consistent, substantial, and over a sufficiently long period of time.  *Gonzalez v. Northwell Health, Inc.*, No. 20CV3256RPKRLM, 2022 WL 4639673, at *7 (E.D.N.Y. Sept. 30, 2022).  It has been noted in this circuit that while underperformance over a period of ten years may be enough to support a claim of a breach of fiduciary duties, underperformance for five years generally is not.  *Id.*

Here, Plaintiffs allege that the Plan ceased to offer the Voya Real Estate Fund in 2019, and the Relevant Period began in December 2015.  This underperformance therefore spanned a period of four years, and thus the court finds that the underperformance was not consistent enough to support an inference that the

13

maintenance of Plan funds in this investment vehicle was imprudent or disloyal. Rather, it appears that Defendants recognized that the Voya Real Estate Fund was not a prudent Plan offering and removed it from the menu of investments offered to participants. Defendants' motion must be granted with respect to the Voya Real Estate Fund.

### 5. *Cohen and Steers Real Asset Multi-Strategy Fund*

Plaintiffs take the same position with respect to the Cohen and Steers Real Asset Multi-Strategy Fund. They assert that Defendants maintained Plan assets in this investment despite it underperforming its benchmarks for the past one-, three-, and five-year period. Additionally, Plaintiffs point to two other funds that charged lower fees than the Cohen and Steers Real Asset Multi-Strategy Fund did.

For the same reasons previously stated, these facts cannot support a claim of breach of fiduciary duties. Underperformance of a benchmark must be consistent over a period longer than five years, and the fact that two other funds charged less does not indicate that the fee charged by this fund was unreasonable or outside industry standards. Defendants' motion also is granted with respect to this investment.

### 6. *Brown Advisory Small-Cap Growth Equity Portfolio*

Plaintiffs also argue that Defendants imprudently maintained Plan assets in the Brown Advisory Small-Cap Growth Equity Portfolio ("Portfolio"), although it was only created in December 2020 and therefore had no performance history. Again, Plaintiffs claim this investment charged unreasonably high fees.

Yet again, Plaintiffs offer only one other plan as a comparison to the Portfolio fees; this is insufficient to find that the Portfolio fees were unreasonably or inordinately high. And to accept Plaintiffs' imprudent maintenance argument would be tantamount to

accepting that a retirement plan can never offer a newly-created investment option to its participants; that is an unreasonable limitation on ERISA fiduciaries.  Performance history is but one measure of the propriety and advantage of any particular investment, and there are many reasons why a retirement plan may find it prudent to offer a new investment. *See Patterson v. Morgan Stanley*, No. 16-CV-6568 (RJS), 2019 WL 4934834, at *10 (S.D.N.Y. Oct. 7, 2019) (finding allegations of underperformance and insufficient performance history inadequate to show a breach of fiduciary duty).  To effectively prohibit ERISA plans from investing in new products would foreclose plan participants from the potential benefits of investments that might prove prudent and lucrative.  Accordingly, the Motion is denied with respect to the Brown Advisory Small-Cap Growth Equity Portfolio.

### 7. *Administrative Costs*

With respect to Plan-level fees, Plaintiffs allege that Defendants should have engaged in a bidding process to select a recordkeeper, instead of having an affiliated entity (Voya Recordkeeper) perform administrative services, and profit from the fees charged to the Plan.  Further, they allege that Defendants failed to monitor the fees and expenses Voya Recordkeeper charged relative to services rendered.  They assert that, according to one authority, smaller retirement plans, with fewer participants and fewer assets, pay an average of $5 per participant for administrative services.  However, they assert that "on information and belief," the Plan paid recordkeeping costs well over that amount.  They further assert that Defendants engaged in revenue sharing that incurred indirect administrative fees inaccessible from publicly-available information.  Finally, they allege that the Plan paid unspecified redemption fees, commissions, and "similar expenses" in connection with specific investment transactions.

Defendants assert that Plaintiffs have failed to state their breach-of-duty claim with respect to the Plan's recordkeeping costs because (1) Plaintiffs do not concretely allege the amount of fees Plan participants actually incurred, and (2) the Plan sponsor paid all recordkeeping and administrative fees, so not only was there no need to engage in a bidding process (since no bid could be better than a $0 fee), but there is no injury to Plan participants, so they have no standing to bring this claim in the first place.

Plaintiffs respond that exhibits attached to the Motion by Defendants show that (1) the Plan sponsor assessed some Plan participants a recordkeeping fee, and (2) the Plan sponsor receives some revenue from the funds offered under the Plan.  Consequently, Plaintiffs assert, they have suffered an injury which gives them standing to sue.  Plaintiffs further argue that Defendants' reliance on their own records is inappropriate at the dismissal stage, and only creates a genuine dispute of fact as to whether investment fees went toward recordkeeping.

Whether the participants suffered an injury is coextensive with the question of whether Defendants caused the Plan to pay excessive fees (thereby causing injury).  Thus, the court will proceed to the substance of the claim.

With respect to the allegation that Voya Recordkeeper charges more than $5 per participant, the court agrees with Defendants that Plaintiffs' belief alone is insufficient to state a claim.  Absent some indication why the actual cost for recordkeeping services could not be ascertained,[11] Plaintiff's belief states merely a conceivable claim, not a plausible one.  And with respect to the allegation of revenue sharing and unspecified fees,

---

[11] Department of Labor regulations generally require ERISA fiduciaries to disclose fees and expenses to employees who are eligible to participate in a benefits plan.  29 C.F.R. § 2550.404a-5.  Moreover, it appears that the documents in which Defendants disclose the Plan's administrative costs to eligible employees might indicate that the Plan sponsor pays all fees.

Plaintiffs state no facts to support those assertions.  Here again, it is not clear what "undisclosed" costs allegedly were charged to participants.  They appear to be the investment-level costs Plaintiffs alleged to be unreasonably high, and which the court has addressed supra in relation to each Contested Investment.  To the extent Plaintiffs refer to some other fees not yet described, the court cannot permit a claim to go forward based upon bald speculation.  The Motion therefore also must be granted with respect to the claims of inappropriate monitoring of administrative fees.

### B. Co-Fiduciary Liability

ERISA provides that a fiduciary may be held liable not only if it breaches its own fiduciary duties, but also if it (1) knowingly participates in (or knowingly undertakes to conceal) an act or omission of another fiduciary, knowing such act or omission is a breach; (2) has enabled another fiduciary to commit a breach by failing to properly execute its own fiduciary duties; or (3) has knowledge of a breach by another fiduciary and fails to make reasonable efforts under the circumstances to remedy it.  29 U.S.C.A. § 1105.

Thus, a co-fiduciary liability claim requires an underlying breach.  Given the court's preceding conclusions, only actions relating to the Voya Small Cap Growth Trust Fund could provide the basis for Plaintiffs' co-fiduciary claim.  But Voya Recordkeeper had no specific role with respect to that fund, there is no allegation that Voya Advisor or Voya Parent had any involvement in that fund, and there is no allegation that Voya Stable Value Manager managed that fund.  Thus, even assuming these defendants are fiduciaries

(which they contest), this claim could not be stated against them.  The only Defendants that possibly could be liable as a co-fiduciary are the Committees, and Voya Trustee.[12]

A party is a fiduciary if they (i) exercise any discretionary authority or control over management of an ERISA plan or its assets, (ii) render investment advice at a (direct or indirect) fee or other compensation regarding any moneys or other property of the plan, or have any authority or responsibility to do so, or (iii) have any discretionary authority or responsibility in the administration of the plan.  29 U.S.C. § 1002(21)(A).  Defendants argue that Voya Trustee is not a Plan fiduciary because it was a directed trustee, meaning that all the actions it took were dictated by contract.  Therefore, Voya Trustee did not have the requisite discretionary authority to be a fiduciary under ERISA.  Plaintiffs respond that Voya Trustee's position as a fiduciary is a question of fact inappropriate for disposition at the motion-to-dismiss stage.

Plaintiffs' point is well-taken, but that does not relieve them of their burden to plead adequate facts from which the court could infer the defendants' fiduciary status.  Nothing in the complaint, aside from conclusory assertions, indicates that Voya Trustee has any discretionary authority over Plan funds and investments.  Without any allegation how Voya Trustee exercised discretion regarding the Plan, the court cannot find that it was a fiduciary.  *See Jander v. Int'l Bus. Machines Corp.*, 205 F. Supp. 3d 538, 542 (S.D.N.Y. 2016) (rejecting similarly conclusory allegations that the defendant was a fiduciary).  The claim for co-fiduciary liability therefore must be dismissed as to Voya Trustee.

---

[12] The court acknowledges that Count Five also is asserted against the thirty unnamed Doe defendants, whose fiduciary status is not disputed in the Motion.  Therefore, again, the court will not discuss the merits of the claim as to them.

However, the Committees are named fiduciaries, and Defendants do not contest their fiduciary status.  Therefore, each may be held liable for the other's breach.  Aside from a conclusory assertion that these entities knew of each other's breach, there are no asserted facts from which the court can infer the Committees' knowledge.  Still, plan administrative committees' typical scope of duties allows the court to conclude that each Defendant's own failure to discharge its fiduciary duties enabled the other to also breach its fiduciary duties.  Therefore, the Motion is denied with respect to this claim.

### C. Prohibited Transactions

ERISA prohibits certain transactions which, to the plan's expense and detriment, may inure to the benefit of a fiduciary, *see* 29 U.S.C. § 1106(b), or to a party in interest, *see* 29 U.S.C. § 1106(a).  Plaintiffs assert that all Defendants have violated both provisions, by (1) entering into service agreements with Voya entities, which Plaintiffs allege charge excessive fees, (2) offering Voya proprietary products as Plan investments, and (3) manipulating the crediting rate for the Voya Stable Value Option and retaining the spread generated from that investment.

#### 1.  *Parties in Interest*

Section 1106(a) generally prohibits fiduciaries from engaging in transactions which constitute any of the following:

> A. sale or exchange, or leasing, of any property between the plan and a party in interest;
> B. lending of money or other extension of credit between the plan and a party in interest;
> C. furnishing of goods, services, or facilities between the plan and a party in interest;
> D. transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or
> E. acquisition, on behalf of the plan, of any employer security or employer real property.

29 U.S.C. § 1106(a).  Claims pursuant to this provision may be brought against the fiduciaries or the parties in interest.  *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000) (finding that a Section 1106(a) claim may be stated against non-fiduciaries where those non-fiduciaries have "actual or constructive knowledge of the circumstances that rendered the transaction unlawful.").

Plaintiffs assert in Count Three, and Defendants do not dispute, that all Defendants are parties in interest under ERISA.  Plaintiffs assert that Defendants have contravened ERISA's prohibition against transactions with parties in interest by (1) offering and maintaining Voya investments as Plan options, (2) retaining Voya subsidiaries to administer, manage, or provide investment advice with regard to Plan investments, and (3) retaining the spread from the Voya Stable Value Option.  They assert these actions caused a direct furnishing of services between the Plan and parties in interest and constituted a transfer of Plan assets to parties in interest.

As discussed above, Plaintiffs have failed to show that the Voya Stable Value Option is improperly managed.  However, each of the Voya entities clearly is a party in interest[13] that either provided services and/or products[14] to the Plan, or that entered into contracts with other parties in interest on behalf of the Plan.  It is unreasonable that any of the defendants would be unaware that they were a fiduciary and/or a party in interest such that these engagements would contravene ERISA.  Plaintiffs therefore have stated this claim against all Defendants.

---

[13] ERISA defines a "party in interest" to include fiduciaries, employers, and service providers.  29 U.S.C.A. § 1002(14)(a).  Therefore, all the Defendants (aside from the individual Doe defendants) clearly qualify as a party in interest regardless of whether any defendant other than the Committees is a fiduciary.

[14] The court acknowledges that aside from the Voya Stable Value Option, it is not clear which entity contracted to provide which Voya products, but because all the Voya entities provided services to the Plan, this claim can still proceed despite that pleading deficiency.

Defendants' argument to the contrary is unavailing. Defendants correctly point out that the mere fact that a financial institution offers its own investment products as part of a menu of investment options available in a retirement plan does not in and of itself violate ERISA. A statutory exemption allows a financial institution to provide "ancillary services" to a plan, provided certain requirements are met (including that the services are provided at compensation that is not excessive, under adequate internal safeguards, and subject to specific guidelines that pass regulatory muster). *See* 29 U.S.C. § 1108(b)(6). And while the applicability of an exemption is considered an affirmative defense, courts still may dismiss ERISA claims under Rule 12(b)(6) if it is "clear from the face of the [c]omplaint or judicially noticed court filings that the [p]lan's use of proprietary funds falls within an available exemption." *Haley v. Tchrs. Ins. & Annuity Assoc. of Am.*, 377 F. Supp. 3d 250, 260 (S.D.N.Y. 2019) (quoting *Moreno v. Deutsche Bank Ams. Holding Corp.*, No. 15 Civ. 9936, 2016 WL 5957307, at *6 (S.D.N.Y. Oct. 13, 2016)); *see also Bekker v. Neuberger Berman Grp. LLC*, No. 16 CV 6123-LTS-BCM, 2018 WL 4636841, at *9 (S.D.N.Y. Sept. 27, 2018) (noting that courts must "still consider whether the facts alleged in the [c]omplaint plainly establish [an] exemption's applicability" although it is an affirmative defense). Here, Defendants entirely have failed to show that the exemption is clearly applicable. They provide no description of any internal safeguards or specific guidelines governing the provision of services. And just as Plaintiffs fail to state relevant administrative fees, so, too, do Defendants. Ergo, just as the court cannot find that those charges were unreasonable, the court cannot find that they were reasonable. As such, Defendants may not benefit from this exemption here.

Accordingly, Plaintiffs have alleged that prohibited transactions occurred insofar as the Committees engaged with Voya entities to provide services to the Plan, thus benefitting all of the Voya entities.

### 2. *Fiduciaries*

Section 1106(b) prohibits a fiduciary from (1) dealing with the assets of the plan in his own interest or for his own account, (2) acting in any transaction involving the plan on behalf of a party whose interests are adverse to the interests of the plan or its participants or beneficiaries, or (3) receiving any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.  29 U.S.C. § 1106(a).

Plaintiffs assert in Count Four that all Defendants are fiduciaries, which Defendants dispute, and that they have all violated this provision by (1) collecting unreasonable fees through service contracts between the Plan and Voya subsidiaries, (2) manipulating the crediting rate for the Voya Stable Value Option and retaining the spread generated therefrom, and (3) using Plan assets to invest in and develop Voya products.  They assert these actions constitute dealing with Plan assets for Defendants' own interests and accounts, and acting on behalf of Voya Parent (whose interests, Plaintiffs argue, are adverse to those of the Plan).

Again, the court already has concluded that Plaintiffs failed to carry its claims with respect to the Voya Stable Value Option, so Plaintiff has failed to show that Voya Parent is an adverse party, or that Defendants were acting for their own benefit in the offer or administration of that investment.  And the court also already has concluded that Plaintiffs failed to show that any of the fees the Plan paid (either those associated with the individual

investments, or the recordkeeping fee charged by Voya Recordkeeper) were unreasonable, so Plaintiff also has failed to show that Defendants were acting for their own benefit in contracting with Voya subsidiaries for services. Therefore, these factual assertions cannot provide the basis for this claim.

However, the court finds that this claim may yet proceed because, as discussed supra, Plaintiffs have satisfied their pleading burden with respect to the Voya Small Cap Growth Trust Fund. Because Plaintiffs adequately pleaded that the inclusion of this investment among the Plan options was imprudent and disloyal, it is reasonable to infer that the Committees (which were responsible for selecting Plan offerings), included the Voya Small Cap Growth Trust Fund in service to Voya Parent (which had a financial interest in investing in its proprietary products, including underperforming ones). Further, Defendants do not dispute that Voya Parent has discretionary authority over the appointment, retention, and removal of Committee members (whose responsibilities generate fiduciary duties). *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 477 (S.D.N.Y. 2005). Therefore, Plaintiffs have alleged that these three entities were fiduciaries whose actions with respect to the Voya Small Cap Growth Trust Fund inured to their own benefit.

Accordingly, this claim may proceed against the Committees and Voya Parent.

### D.  Failure to Monitor

 "Under ERISA, fiduciaries who have appointed other fiduciaries have a continuing duty to monitor the actions of the appointed fiduciaries." *In re Bausch & Lomb Inc. ERISA Litig.*, No. 06-CV-6297, 2008 WL 5234281, at *10 (W.D.N.Y. Dec. 12, 2008). However, duty-to-monitor claims require an underlying breach in order to be viable. *Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 68 (2d Cir. 2016).

In Count Two, Plaintiffs assert a failure to monitor claim against Voya Parent for allegedly failing to monitor Plan fiduciaries.[15]  The only predicate breach that can form the basis of this claim is the offer to participate in the Voya Small Cap Growth Trust Fund. As previously discussed, Plaintiffs have adduced sufficient facts from which it is reasonable to infer that inclusion of the fund in the Plan offerings not only was imprudent, but also that it was driven by a desire to benefit Voya Parent.  Therefore, the facts undergirding Count One also undergird the claim that Voya Parent failed to monitor the Committees in the execution of their fiduciary duties (and more specifically, in their selection of investments for Plan assets).  Therefore, Count Two can proceed against Voya Parent.

## IV.    CONCLUSION

Accordingly, it is thereupon **ORDERED AND ADJUDGED** as follows:

1. The Motion to Dismiss (ECF No. 15) is **GRANTED in part.**

    a.  The motion is denied with respect to Count Three.

    b.  The motion is denied with respect to Count Five, but only as it is stated against the Committees**.**

    c.  The motion is denied with respect to Counts One, Two, and Four, but only as those Counts relate to the Voya Small Cap Growth Trust Fund.

2. Plaintiffs may file an amended complaint on or before **August 14, 2023.**

---

[15] Plaintiffs assert Voya Parent failed to monitor all Defendants (themselves fiduciaries), but (as previously explained) the court need not address whether any defendants other than the Committees are fiduciaries.

**IT IS SO ORDERED** in Hartford, Connecticut, this 13th day of June, 2023.

_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE