## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| David Ravarino *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Voya Financial, Inc., *et al.*,<br><br>Defendants. | Civil No. 3:21-cv-01658 (OAW)<br><br><br>March 31, 2025 |

## RULING AND ORDER ON MOTION TO COMPEL

This is an employee benefits case. The Plaintiffs are ten individuals who participated in a 401(k) savings plan administered by their employer, Voya Financial, Inc. (Compl., ECF No. 1, ¶¶ 6-15.) The Defendants are Voya, four of its subsidiaries, and the 401(k) plan's Administrative and Investment Committees. (*Id.* ¶¶ 16-22.) The Plaintiffs assert that the Defendants violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, when they allegedly breached their fiduciary duties and engaged in conflicted financial transactions. (*See generally id.*) The Plaintiffs seek to certify a class composed of "[a]ll participants in the [Voya 401(k)] Plan who invested through the Plan from December 14, 2015 to the present." (*Id.* ¶ 116.)

The presiding District Judge, the Honorable Omar A. Williams, dismissed some of the Plaintiffs' claims in response to a motion under Fed. R. Civ. P. 12(b)(6). *Ravarino v. Voya Fin. Inc.*, No. 3:21-cv-01658 (OAW), 2023 WL 3981280, at *12 (D. Conn. June 13, 2023). The Plaintiffs then served interrogatories, requests for production, and deposition notices. The Defendants objected on several different grounds, but their principal complaint was that the requests sought "documents and/or information beyond the claims that survived the Court's order on Defendants' Motion to Dismiss." (*E.g.*, Ex. 6 to Pls.' Memo. of L., ECF No. 93-8, at 5.) The

1

Plaintiffs disagreed, and the parties were unable to resolve their dispute through the meet-and-confer process. (*See* Aff. of R. Doriott Dominguez, ECF No. 93-2.)

The Plaintiffs have now moved the Court for an order compelling the Defendants to produce all documents responsive to their thirty-seven requests for production, to provide complete responses to their five interrogatories, and to produce witnesses in response to their seventeen deposition notices.[1] (Mot. to Compel, ECF No. 93) ("Motion"). Judge Williams referred the Motion to the undersigned Magistrate Judge for resolution. For the reasons that follow, the Motion will be granted in part and denied in part as set forth more fully in Section III below.

## I.     BACKGROUND

Voya Financial, Inc. ("Voya") is a financial, retirement, investment, and insurance company. (Compl., ECF No. 1, ¶ 16; Ans., ECF No. 63, ¶ 16.) Voya has several corporate subsidiaries, including Voya Services Company, an entity that sponsors a 401(k) savings plan for Voya employees (the "Plan"). (Ans., ECF No. 63, ¶ 16.) The Plan offered a variety of Voya proprietary investment options, including the Voya Stable Value Option, several Voya Target Date Funds, the Voya Small Cap Growth Trust Fund, the Voya Real Estate Fund, the Cohen and Steers Real Asset Multi-Strategy Fund, and the Brown Advisory Small-Cap Growth Equity Portfolio. *Ravarino*, 2023 WL 3981280 at *3.

The Plaintiffs filed this lawsuit on December 14, 2021. (Compl., ECF No. 1.) They alleged that Voya engaged in "self-dealing at the expense of its own workers' retirement savings" (*id.* ¶ 1), and they pled their complaint in five counts. In Count I, they alleged that the Defendants violated

---

[1]     The Plaintiffs' motion also sought clarification of the class certification briefing schedule and an extension of the fact discovery deadline. (Mot. to Compel, ECF No. 93, at 1–2.) Judge Williams ruled upon those two requests separately (Order, ECF No. 97), and they therefore will not be addressed in this Ruling and Order.

ERISA Section 404(a) when they "failed to employ a prudent and loyal process for selecting and monitoring the Plan's investment options by *inter alia*, improperly prioritizing Voya's proprietary investments over superior available options." (*Id.* ¶ 127.) In Count II, they alleged that Voya breached its duty to monitor the Plan's fiduciaries. (*Id.* ¶ 137.) In Count III, the Plaintiffs asserted that the Defendants violated ERISA Section 406(a) when they engaged in prohibited transactions with parties in interest. (*Id.* ¶¶ 152–56.) Count IV alleged that the Defendants violated ERISA Section 406(b) when they conducted prohibited transactions with Plan fiduciaries. (*Id.* ¶¶ 164–72.) And in Count V, mistakenly labeled as a second Count IV, the Plaintiffs claimed that each Defendant must answer for their losses under the co-fiduciary liability principles codified in ERISA Section 405(a). (*Id.* ¶¶ 177–82.) In their prayer for relief, the Plaintiffs sought a judicial declaration of the Defendants' liability; disgorgement "of all unjust profits incurred, directly or indirectly, by Voya and its subsidiaries and affiliates, as a result of the Defendants' violations of ERISA"; an order compelling the Defendants "to restore all losses to the Plan"; equitable restitution; and "[s]uch other equitable or remedial relief as may be appropriate." (*Id.* § IX.A–G.)

The Defendants moved to dismiss the complaint (ECF No. 20), and Judge Williams granted their motion in part and denied it in part. He began his opinion with an investment-by-investment analysis of the breach of fiduciary duty claim in Count I. *Ravarino*, 2023 WL 3981280, at *3 ("The court will address each of the Contested Investments individually."). He concluded that the Plaintiffs had not pled a legally sufficient claim with respect to the management of five of the six investment funds at issue, but that they had plausibly alleged a breach of the duty of prudent management with respect to the Voya Small Cap Growth Trust Fund ("Small Cap Fund"). *Id.* at *2–8. He therefore dismissed Count I except as it related to the Small Cap Fund. *Id.* at *12.

Judge Williams then turned to the failure-to-monitor claim in Count II. Noting that "duty-to-monitor claims require an underlying breach in order to be viable," and having determined that the Plaintiffs had plausibly alleged such a breach only with respect to the Small Cap Fund, he granted the Defendants' dismissal motion in part and denied it in part on the same terms as Count I. *Id.* at *11–12. He also partially dismissed the co-fiduciary liability claim in Count V, because that claim likewise "requires an underlying breach," and "only actions relating to the [Small Cap Fund] could provide the basis" for such a breach. *Id.* at *8. Moreover, he concluded that the Plaintiffs had failed to plausibly allege that each Defendant was a fiduciary with respect to that fund, and accordingly Count V survived "only as it is stated against the [Administration and Investment] Committees." *Id.* at *12. In summary, all that remained of the three breach of fiduciary duty counts after the decision on the motion to dismiss were (1) Count I only as it relates to the Small Cap Fund; (2) Count II only as it relates to the Small Cap Fund; and (3) Count V only as it relates to the Small Cap Fund and is directed to the Administrative and Investment Committees.[2] *Id.* at *8, *12.

Judge Williams then addressed the prohibited transaction claims alleged in Counts III and IV. *Id.* at *9–11. He began by noting that "ERISA prohibits certain transactions which, to the plan's expense and detriment, may inure to the benefit of a fiduciary . . . or to a party in interest." *Id.* at *9 (citing 29 U.S.C. §§1106(b), 1106(a)). The Plaintiffs had alleged both types of prohibited transactions; in Count III, they alleged that the Defendants violated ERISA Section 406(a) when they engaged in transactions with parties in interest, and in Count IV, they claimed that the

---

[2]     The Plaintiffs acknowledge that the co-fiduciary claim in Count V is now limited to the Administration and Investment Committees after the decision on the motion to dismiss, but they disagree that it is limited to the Small Cap Fund. (Pls.' Memo. at 15) (asserting that "the Surviving Claims include co-fiduciary liability not limited to the Voya Small Cap Fund"). The Court will address this in more detail in Section III below.

Defendants violated Section 406(b) when they transacted prohibited business with fiduciaries.  *Id.* ("Plaintiffs assert that all Defendants have violated both provisions[.]").  Specifically, the Plaintiffs alleged that the Defendants violated ERISA "by (1) entering into service agreements with Voya entities, which Plaintiffs allege charge excessive fees, (2) offering Voya proprietary products as Plan investments, and (3) manipulating the crediting rate for the Voya Stable Value Option and retaining the spread generated from that investment."  *Id.*  Judge Williams considered whether these allegations amounted to a plausible claim that could survive the Defendants' motion to dismiss.

With respect to Count III, Judge Williams noted that the Defendants did not dispute that they were all "parties in interest under ERISA."  *Id.*  The complaint alleged that each Defendant "either provided services and/or products to the Plan, or . . . entered into contracts with other parties in interest on behalf of the Plan," and the judge found it "unreasonable that any of the defendants would be unaware that they were a . . . party in interest such that these engagements would contravene ERISA."  *Id.* at *10 (footnote omitted).   He therefore concluded that the "Plaintiffs have alleged that prohibited transactions occurred insofar as the [Administration and Investment] Committees engaged with Voya entities to provide services to the Plan, thus benefitting all of the Voya entities."  *Id.*

Judge Williams then addressed the Defendants' argument that Count III was legally insufficient because a dispositive defense was clear from the face of the complaint.  *Id.*  The Defendants had "correctly point[ed] out that the mere fact that a financial institution offers its own investment products as part of a menu of investment options available in a retirement plan does not in and of itself violate ERISA," because a statutory exemption from prohibited transaction rules "allows a financial institution to provide 'ancillary services' to a plan, provided certain

requirements are met." *Id.* But dismissing the Plaintiffs' claim on the basis of that exemption would require, among other things, evidence of "internal safeguards or specific guidelines governing the provision of services," and evidence of the reasonableness of the fees charged. *Id.* Because no such evidence was before him on a motion to dismiss, Judge Williams concluded that the Defendants could not "benefit from this exemption" at that stage, and that the Plaintiffs had therefore stated a plausible Section 406(a) claim.[3] *Id.*

With respect to Count IV, Judge Williams reviewed some of the same breach-of-fiduciary-duty allegations that he had reviewed in the context of Count I, and concluded that they "cannot provide the basis for" a prohibited transaction claim under ERISA Section 406(b). *Id.* at *11. But he also found that "this claim may yet proceed because . . . Plaintiffs have satisfied their pleading burden with respect to the [Small Cap Fund]." *Id.* "Because Plaintiffs adequately pleaded that the inclusion of this investment among the Plan options was imprudent and disloyal, it is reasonable to infer that the Committees (which were responsible for selecting Plan offerings), included the [Small Cap Fund] in service to Voya." *Id.* He therefore allowed Count IV to proceed "against the Committees and Voya" only—in other words, against only three of the seven Defendants—and only as it "relate[d] to the [Small Cap Fund]." *Id.* at *11–12.

---

[3]    After Judge Williams issued his ruling, the Court of Appeals for the Second Circuit decided the case of *Cunningham v. Cornell University*, 86 F.4th 961 (2d Cir. 2023). In *Cunningham*, the Court of Appeals observed that the language of ERISA Section 406(a) "supports the view that the burden of raising [statutory] exemptions lies, at least in part, with the plaintiff." *Id.* at 975. After the *Cunningham* decision, the Defendants in this case filed a motion for judgment on the pleadings, contending that the Court of Appeals had "ruled that Defendants did not have the burden of showing that the exemptions are applicable." (Memo. of L. in Supp. of Mot. for J. on the Pleadings, ECF No. 70-1, at 1–2.) That motion is *sub judice* as of this writing.

In addition, the *Cunningham* plaintiffs obtained a writ of certiorari from the United States Supreme Court. *Cunningham v. Cornell Univ.*, 145 S.Ct. 118 (2024). They argued that case before the Supreme Court on January 22, 2025, and a decision is pending.

About five months after Judge Williams' decision on the motion to dismiss, the Plaintiffs served thirty-seven Rule 34 document production requests on the Defendants. (Ex. 3 to Mot., ECF No. 93-5.) The Defendants objected to all thirty-seven on the ground that they were "not tailored to the claims that remain before the Court following its ruling on Defendants' Motion to Dismiss." (Ex. 4 to Mot., ECF No. 93-6, at 7.) They also objected to all thirty-seven on the grounds that they were "vague, ambiguous, overbroad, and disproportionate to the needs of the case." (*Id.* at 7–8.) Later, they would add other objections in a revised set of responses (*see* Ex. 6 to Mot., ECF No. 93-8), but the same themes predominated: the requests assertedly sought "documents and/or information beyond the claims that survived the Court's order on the Defendants' Motion to Dismiss," and were "overbroad . . . and not proportional to the needs of the case" for this reason and others. (*See, e.g.*, *id.* at 5.) The Defendants stated that they would produce thirty-one groups of documents that they "believe[d] are relevant to the claim or defense of any party, and proportional to the needs of the case, considering the Court's Motion to Dismiss ruling and the remaining claims and defenses in the Lawsuit." (Ex. 4 to Mot., ECF No. 93-6, at 8–10.) They then made three productions totaling 420 documents and 3,292 pages. (Pls.' Memo. of L. in Supp. of Mot. to Compel, ECF No. 93-1, at 5–6) ("Pls.' Memo.").

About a month after they served their Rule 34 requests for production, the Plaintiffs served five interrogatories under Rule 33. (Ex. 7 to Mot., ECF No. 93-9.) The Defendants objected to four of the five "to the extent [they sought] information beyond the claims that survived Defendants' Motion to Dismiss." (Ex. 8 to Mot., ECF No. 93-10, at 5–11.) For example, when asked to identify "all individuals and/or entities that were ERISA fiduciaries or served in any fiduciary capacity to the Plan," the Defendants identified corporate fiduciaries of the Small Cap Fund but declined to identify the fiduciaries of the other funds. (*Id.* at 5.) The only interrogatory

that the Defendants answered without a specific objection was Interrogatory 5, which asked them to "identify all facts, documents, or other evidence" supporting any claim of statutory exemption from the rules prohibiting party-in-interest transactions.  (*Id.* at 12.)

The Plaintiffs disagreed with the Defendants' objections, and the parties discussed them in letters, e-mails, and by telephone.  (*See, e.g.*, Ex. 14 to Mot., ECF No. 93-16; Ex. C to Defs.' Opp'n, ECF No. 99-4.)  While these discussions were occurring, the Plaintiffs served seventeen deposition notices on the Defendants—ten notices for individual deponents under Rule 30(b)(1), and one corporate designee notice under Rule 30(b)(6) for each of the seven corporate entity Defendants.  (*See* Exs. H–N to Defs.' Opp'n, ECF Nos. 99-9 through 99-15.)  The Defendants objected to these notices in an e-mail sent later that day.  (Ex. F to Defs.' Opp'n, ECF No. 99-7.) They pointed out that the depositions were noticed for a date beyond the then-existing discovery deadline, and that the notices "exceed[ed] the 10-deposition limit imposed by Rule 30(a)(2)(A)(i)," "which the parties indicated they would adhere to in their joint [Rule] 26(f) report."  (*Id.*)  And in what would later become another theme of their opposition, the Defendants added that because they had demonstrated their entitlement to a statutory exemption from party-in-interest prohibited transaction rules through their answer to Interrogatory 5, "Plaintiffs' 17 deposition notices are not proportionate to the needs of this lawsuit in light of the Court's motion to dismiss ruling."  (*Id.*)

The Plaintiffs then filed the instant motion, seeking an order compelling the Defendants to produce all documents responsive to the thirty-seven requests for production, to provide complete answers to all five interrogatories, and to produce witnesses in response to all seventeen deposition notices.  (Mot. at 1.)  They supported their Motion with a thirty-six page memorandum of law, a six-page affidavit, and twenty-five exhibits totaling 203 pages.  (ECF Nos. 93 through 93-27.)  The Defendants responded with a thirty-four page opposition memorandum supported by two attorney

declarations and fifteen exhibits totaling 142 pages. (ECF Nos. 99 through 99-17.)  The Plaintiffs then filed a nine-page reply memorandum.  (Pls.' Reply, ECF No. 100.)

Although neither side had requested a hearing, the Court held one in light of the number and nature of the parties' claims.  (*See* Minute Entry, ECF No. 116.)  In addition to the substantive dispute over the effect of Judge Williams' order on the scope of discovery, the Plaintiffs' motion raised several issues that the Court referred to as "process issues," including the format of the Defendants' 3,262-page document production, the permissibility of the Defendants' document redactions, and so forth.  (Pls.' Memo. at 20–23.)  For their part, the Defendants contended that the Plaintiffs had  failed to meet and confer as required by D. Conn. L. Civ. R. 37 before filing their motion.  (Defs.' Memo. at 20–21.)  The Court convened a hearing principally to determine whether the parties could resolve these "process issues" between themselves.

At the hearing, the Court concluded that "the motion would benefit from additional meeting-and-conferring."  (Order, ECF No. 117.)  It therefore directed the parties "to make diligent, good faith efforts to resolve as many of their disputes as possible, through actual conferences (either in person or by telephone) rather than by emails or letters."  (*Id.*)  It further directed them "to file a joint status report . . .  identifying which issues they have been able to resolve, and which issues the Court must resolve for them."  (*Id.*)  Two weeks later, the parties reported that they had "resolved all process issues identified by the Court."  (Jt. Status Rpt., ECF No. 118, at 1.)  Other, more substantive disputes remain.  (*Id.* at 1–2.)  The parties having been unable to resolve them, the Court will now do so.

## II.   DISCUSSION

### A.   Applicable Legal Principles

Subject to the proportionality requirement and other limitations set forth in Rule 26, a party may discover relevant, nonprivileged information in the other party's possession. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ P. 26(b)(1). Moreover, information "within [the] scope of discovery need not be admissible in evidence to be discoverable." *Id.*

Information is "relevant" if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401; *see also Gaynor v. City of Meriden*, No. 3:17-cv-01103, 2019 WL 2537669, at *2 (D. Conn. June 20, 2019) ("While the Federal Rules of Civil Procedure do not define 'relevant,' the operative definition can be found in Rule 401 of the Federal Rules of Evidence[.]"); *In re PE Corp. Secs. Litig.*, 221 F.R.D. 20, 23 (D. Conn. 2003) (employing Rule 401's definition of relevance in addressing discovery dispute under Rule 26). "[T]he determination of whether . . . information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action." Fed. R. Civ. P. 26 advisory committee's notes to 2000 amendments. In part because the concept of relevance is not limited by considerations of evidentiary admissibility at the discovery stage, *see* Fed. R. Civ. P. 26(b)(1), "[i]t is well established that relevance for purpose of discovery is broader in scope than relevance for the purpose of the trial itself." *Vaigasi v. Solow Mgmt. Corp.*, No. 1:11-cv-05088 (RMB) (HBP), 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016); *accord Martino v. Nationstar Mortg. LLC*, No. 3:17-cv-01326 (KAD), 2019 WL 2238030, at *1 (D. Conn. May 23, 2019) (observing that, at the discovery stage, relevance is "an extremely broad concept").

This does not mean, however, that the scope of discovery is unlimited. As Judge Merriam has put it, "[t]he broad standard of relevance . . . is not a license for unrestricted discovery." *DiPippa v. Edible Brands, LLC*, No. 3:20-cv-01434 (MPS) (SALM), 2021 WL 2201194, at \*3 (D. Conn. June 1, 2021) (quoting *Gucci Am., Inc. v. Guess?, Inc.*, 790 F. Supp. 2d 136, 140 (S.D.N.Y. 2011)). Although it is broad, the Rule 26(b)(1) standard nonetheless "does not allow a party to roam in [the] shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." *Williams v. City of Hartford*, No. 3:15-cv-00933 (AWT), 2016 WL 3102001, at \*2 (D. Conn. June 2, 2016) (quoting *Wells Fargo Bank, N.A. v. Konover*, No. 3:05-cv-01924 (CFD) (WIG), 2009 WL 585430, at \*5 (D. Conn. Mar. 4, 2009)). And despite the breadth of Rule 26(b)(1), "it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978); *see also Kopperl v. Bain*, No. 3:09-cv-01754 (CSH) (JGM), 2014 WL 1761956, at \*1 (D. Conn. May 1, 2014) ("Based upon this language in *Oppenheimer*, judges in this district, as well as in other districts, have refused to allow parties to pursue discovery regarding claims that previously have been dismissed.").

When a discovery-seeking party moves to compel responses to its requests, it bears the burden to demonstrate that the requests are within the scope of Rule 26(b)(1). As this Court has previously observed, "[t]he burden of demonstrating relevance initially rests with the party seeking discovery." *Doe v. Wesleyan Univ.*, No. 3:19-cv-01519 (JBA) (TOF), 2021 WL 4704852, at \*3 (D. Conn. Oct. 8, 2021) (citing *Bagley v. Yale Univ.*, 315 F.R.D. 131, 144 (D. Conn. 2016), *as amended* (June 15, 2016)). "'Once the requesting party has made a *prima facie* showing of relevance,' however, 'it is up to the responding party to justify curtailing discovery.'" *Id.* (quoting *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 48 (E.D.N.Y. 2018)). "Put

differently, once the moving party shows that the requested information 'bears on, or reasonably could lead to other matter that could bear on, any issue' in the case, 'the party resisting discovery bears the burden of showing why discovery should be denied.'" *Id.* (quoting *Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. 2009)) (brackets and ellipsis omitted).

One proper basis for objecting to otherwise-relevant discovery is when compliance would involve "undue burden or expense." Fed. R. Civ. P. 26(c)(1). To successfully resist discovery on those grounds, "the responding party ordinarily must 'submit affidavits or offer evidence revealing the nature of the burden.'" *Conservation L. Found. v. All-Star Transp., LLC*, No. 3:21-cv-00201 (JBA) (TOF), 2022 WL 16901999, at *2 (D. Conn. Nov. 11, 2022) (quoting *Pegoraro v. Marrero*, 281 F.R.D. 122, 128–29 (S.D.N.Y. 2012) ("*All-Star*"); *see also Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petro. Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984). "District courts may, however, overlook the lack of an affidavit or other evidence of burden when the requests are overly broad or unduly burdensome on their face." *All-Star*, 2022 WL 16901999, at *2 (citing *In re Kidd*, No. 3:20-cv-00800 (KAD), 2020 WL 5594122, at *11 (D. Conn. Sept. 18, 2020)).

The responding party may also properly object when the requested discovery is disproportionate to the needs of the case. Under Rule 26, the scope of discovery includes relevant, non-privileged information that is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). In determining whether a given discovery request meet this standard, the "analysis focuses on the marginal utility of the requested discovery." *Conn. Mun. Elec. Energy*

*Coop. v. Nat'l Union Fire Ins. Co.*, No. 3:19-cv-00839 (JCH) (RAR), 2020 WL 6074204, at *6 (D. Conn. Oct. 15, 2020). "[E]ven relevant information must be reasonably proportional to the value of the requested information, the needs of the case, and the parties' resources." *Parimal v. Manitex Int'l, Inc.*, No. 3:19-cv-01910 (MPS) (SALM), 2021 WL 1978347, at *5 (D. Conn. May 18, 2021) (quoting *New Falls Corp. v. Soni*, No. 2:16-cv-06805 (ADS) (AKT), 2020 WL 2836787, at *2 (E.D.N.Y. May 29, 2020)).

When a proportionality dispute comes to the Court in the form of a motion to compel, "[e]ach party bears a burden." *All-Star*, 2022 WL 16901999, at *2. On the one hand, the discovery-seeking party "should be able to explain the ways in which the underlying information bears on the issues as the party understands them." *Id.* (quoting Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendments) (brackets omitted). On the other hand, the responding party "bears the burden on the 'burden and expense' element of the proportionality analysis." *Id.* (quoting *Huseby, LLC v. Bailey*, No. 3:20-cv-00167 (JBA) (TOF), 2021 WL 3206776, at *8 n.3 (D. Conn. July 29, 2021)). The responding party's burden is not ordinarily met "simply by making a boilerplate objection that [the requested discovery] is not proportional." *Endurance Am. Spec. Ins. Co. v. Wm. Kramer & Assocs.*, No. 3:18-cv-00192 (MPS) (RAR), 2020 WL 6940761, at *7 (D. Conn. Mar. 30, 2020). As with a stand-alone claim of undue burden, a lack-of-proportionality objection premised on burden and expense ordinarily must be supported by an affidavit. *Success Sys., Inc. v. CRS, Inc.*, No. 3:21-cv-01391 (SVN) (TOF), 2023 WL 2403940, at *4 (D. Conn. Mar. 8, 2023) ("And even if Success had preserved a lack-of-proportionality objection, it was obliged to support the burden element of the proportionality analysis with an affidavit or other proof."). Here too, however, the Court can overlook the lack of an affidavit if the discovery request is plainly disproportionate on its face. *Conservation L. Found. v. Shell Oil Co.*, No. 3:21-cv-00933 (JAM)

(TOF), 2023 WL 5434760, at *20 (D. Conn. Aug. 22, 2023) ("*Shell Oil*") (sustaining defendants'
objections to ten requests for production because an affiant had proven disproportionality, but also
sustaining objections to forty-four others not addressed by the affiant because those requests were
"facially . . . disproportionate to the needs of the case").

## B.    Requests for Production

With the foregoing principles in mind, the Court will first address the Plaintiffs' request for
an order compelling full compliance with each of their thirty-seven requests for production.  (Mot.
at 1.)  As noted in Section II, the Defendants asserted a variety of objections to these requests, but
their principal claim is that the requests do not account for the effect of Judge Williams' decision
on the scope of permissible discovery.  (*See* Defs.' Opp'n at 2.)  In making their respective
arguments about the effect of that decision, each side invites the Court to decide two issues on a
blanket basis—that is, without a particular request for production in view.

First, the parties dispute whether Count V's co-fiduciary liability claim can support
discovery into funds other than the Small Cap Fund.  The Plaintiffs acknowledge that that claim
must now be directed only to the Administrative Committee and the Investment Committee.  (Pls.'
Memo. at 4.)  But they contend that the scope of the claim is "not limited to the Voya Small Cap
Fund" (*id.* at 15), and that they may therefore legitimately inquire into the Committees' handling
of other funds.  The Defendants respond that this argument "ignores the Court's order."  (Defs.'
Memo. at 25.)  They read the order as dismissing the co-fiduciary claim "as to all of the challenged
products and services except for the [Small Cap Fund]."  (*Id.*) (emphasis omitted).

The Court agrees with the Defendants on this point.  Judge Williams was clear that "a co-
fiduciary liability claim requires an underlying breach."  *Ravarino*, 2023 WL 3981280, at *8.  And
he was equally clear that "only actions relating to the [Small Cap Fund] could provide the basis

for Plaintiffs' co-fiduciary claim," given the conclusions that he reached when he performed his fund-by-fund analysis of Count I. *Id.* Because the Plaintiffs did not plausibly allege a breach of fiduciary duty with respect to any other fund, their co-fiduciary liability claim does not support discovery into those funds. *See Kalra v. Adler Pollock & Sheehan, P.C.*, No. 3:18-cv-00260 (KAD) (TOF), 2020 WL 7828790, at *6 (D. Conn. Dec. 31, 2020) ("As the U.S. Supreme Court has explained, it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken.") (citation and quotation marks omitted).

Second, the parties disagree on the discovery consequences of the survival of Count III. The Plaintiffs say that, because the prohibited transaction claim is still in the case, they may discover any non-privileged information relevant to it, including information about whether the compensation paid for the transaction was reasonable, the funds from which the compensation came, and so forth. (Pls.' Reply Memo., ECF No. 100, at 4.) The Defendants counter with an argument that "the scope of discovery is limited by the nature of the claim." (Defs.' Memo. at 6.) They contend that, because Judge Williams held that all seven Defendants "meet the definition of parties in interest under § 1106(a)," "discovery on who is a party in interest is not needed." (*Id.* at 9.) In their view, this leaves only one issue for trial and, by extension, for discovery: "whether the exemptions to § 1106(a)(1) apply here." (*Id.*) And because they claim to have "already produced the documents necessary to show that an exemption applies to each of the transactions about which Plaintiffs complain," they say they should not have to produce anything else. (*Id.*)

The Court agrees with the Plaintiffs on this point. Litigants have the right to discover non-privileged information that is proportional to the needs of the case and relevant to a live claim, Fed. R. Civ. P. 26(b)(1), and they do not lose this right just because their adversary thinks it has a compelling defense. *Admiral Ins. Co. v. Versailles Med. Spa, LLC*, No. 3:20-cv-00568 (JCH)

(TOF), 2021 WL 106273, at *3 (D. Conn. Jan. 12, 2021) ("[I]t is well established that discovery ordinarily should not be denied because it relates to a claim or defense that is being challenged as insufficient.") (citation and quotation marks omitted); *Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co.*, No. 1:90-cv-07811 (KC) (JCF), 1993 WL 437767, at *3 (S.D.N.Y. Oct. 26, 1993) (observing that "a discovery motion is not the proper forum for deciding the merits of" the claim). The responding party may not defeat the discovering party's rights by producing a handful of documents in support of a defense, and then claiming that any additional relevant discovery is unduly burdensome or disproportionate. "If that were the rule, it would be difficult to see how anyone would ever get any discovery." *Huseby, LLC*, 2021 WL 3206776, at *8. "A defendant in an intersection accident, for example, could simply file an affidavit claiming, 'I had the green light,' and then resist all discovery into who had the right of way as 'disproportionate.'" *Id.*

Having thus addressed the two issues that the parties addressed on a blanket basis, the Court will now turn to the specifics of the Plaintiffs' thirty-seven requests. In their brief, the Plaintiffs grouped thirty-five[4] of the thirty-seven into seven categories. *See* D. Conn. L. Civ. R. 37(b)1 (permitting movants to "group" its requests into "categories" when a motion to compel implicates "several different items of discovery"). (Pls.' Memo. at 12.) The Court rules upon the seven categories, and the thirty-five requests within them, as follows:

   *1.     Requests seeking "Plan governing documents and insurance policies."* (Request Nos. 1, 2, 35.) In this category, the Plaintiffs seek production of "[a]ll Plan document(s), summary plan description(s), investment policy statement(s), or other such governing document(s)." (Req. No. 1, Ex. 6 to Mot., at 5.) They also seek "[a]ny other documents pursuant to which the Plan was

---

[4]     The Plaintiffs did not place Request No. 11 or Request No. 14 into a category, or otherwise brief them.

established, or that governed the administration of the Plan at any time during the Class Period." (Req. No. 2, Ex. 6 to Mot., at 6.)  The Plaintiffs say that documents responsive to these two requests will be relevant to Count III's prohibited transactions claim, because they will enable them "to verify each Defendant's role with regard to the various funds and investment options within the Plan."  (Pls.' Memo. at 13.)

The Defendants do not dispute the Plaintiffs' claims of relevance, nor have they provided an affidavit or other evidence that would support a claim of undue burden or lack of proportionality. (Defs.' Memo. at 24.)  They say that they have "produced documents responsive to these Requests," and they complain that the Plaintiffs have "not specified . . . how Defendants' production is insufficient."  (*Id.*) But they do not say that they produced *all* responsive documents,[5] and since the Plaintiffs cannot know what the Defendants have not produced, they are under no obligation to explain why they should not be satisfied with a partial production of the Defendants' choosing.  The Court will order the Defendant to comply with Request Nos. 1 and 2.

Request No. 35 sought production of "[a]ny applicable insurance policy or policies under which an insurance business may be liable to satisfy all or part of a possible judgment in this action or to indemnify or reimburse for payments made to satisfy the judgment, in effect during the Class Period."  (Req. No. 35, Ex. 6 to Mot., at 51.)  The Defendants did not object to this Request,[6] and

---

[5]      In their responses to most of the Plaintiffs' thirty-seven requests, the Defendants set forth several objections and then said that they had produced responsive documents "[s]ubject to and without waiving those objections."  (*E.g.*, Resp. to Req. No. 2, Ex. 6 to Mot., at 6–7.)  In contravention of Rule 34(b)(2)(C), they did not state whether they were withholding responsive documents pursuant to those objections.  (*E.g.*, *id.*) At the hearing, the Court asked the Defendants' counsel whether there was even a single request for production as to which the Defendants had objected, yet nonetheless produced *all* responsive documents.  Counsel confirmed that there were no such requests.

[6]      The Defendants asserted "general objections" to all thirty-seven requests in their initial set of responses and objections.  (Ex. 4 to Mot., ECF No. 93-6.)  But in their later, revised set, they

indeed they committed to "produce the applicable insurance policy." (*Id.*) The Plaintiffs have provided no basis for supposing that the Defendants' production is insufficient, and accordingly their Motion is denied as to Request No. 35. *See Lewis v. Doe*, No. 3:19-cv-02015 (JCH) (TOF), 2021 WL 863473, at * (D. Conn. Mar. 8, 2021) (denying motion to compel where discovery-seeking party had not come forward with "a strong reason for disbelieving the responding party's claim to have made a complete production").

      2.    *Requests seeking "documents regarding services provided to the Plan."* (Request Nos. 3, 4, 5, 6, 30, 32, 33.) The Plaintiffs argue that documents responsive to this class of requests will be relevant to their prohibited transactions claim, because they will show "the costs paid to the third parties from Plan assets, the exact services performed by those parties for Plaintiffs and the Plan, and any changes regarding costs paid and services provided during the Class Period." (Pls.' Memo. at 14.) In response, the Defendants do not address the relevance of these requests to the prohibited transactions claim, except to say that they are not "pertinen[t] . . . to the . . . statutory exemptions." (Defs.' Memo. at 25.) But as noted above, the scope of permissible discovery on Count III is broader than the Defendants' exemption defense. Because the Plaintiffs have made a *prima facie* showing of relevance that has not been persuasively rebutted, and because the Defendants have not come forward with an affidavit supporting their burden and lack-of-proportionality objections, the Plaintiffs' Motion will be granted as to Requests 3, 4, 5, 6, 30, 32, and 33.

      3.    *Requests seeking "documents regarding investment options, performance, [and] evaluations of the Plan."* (Request Nos. 7, 8, 15, 16, 17, 18, 25.) This category implicates the

---

asserted neither a general nor a specific objection to Request No. 35. (Ex. 6 to Mot., ECF No. 93-8, at 51.)

parties' dispute over the scope of Count V's co-fiduciary duty claim after Judge Williams' ruling on the Defendants' motion to dismiss.  The Defendants have produced some documents responsive to these requests, but only with respect to the Voya Stable Value Option and the Small Cap Fund. (Pls.' Memo. at 15.)  Believing that their co-fiduciary liability claim entitles them to take broader discovery, the Plaintiffs seek responsive documents relating to the other funds.  (*Id.*)  For the reasons previously stated, the Court disagrees that the co-fiduciary liability claim can support this sort of discovery.

The Plaintiffs contend that these requests are also relevant to the prohibited transaction claims.  (*Id.*)  But their argument is only a single sentence long, and the Court regards it as too attenuated to support discovery requests of this breadth.  (*Id.*) (stating only that "documents responsive to these requests are necessary for Plaintiffs to pursue the surviving prohibited transaction claims, especially to the extent Defendants were responsible for creating, reviewing, or utilizing the documents in providing their respective services and received compensation from the Plan incident to those services").  As previously noted, Rule 26 "does not allow a party to roam in [the] shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so."  *Williams,* 2016 WL 3102001, at *2.

At the same time, however, the Plaintiffs are entitled to a complete rather than a partial production of documents that relate to the Small Cap Fund.  The Defendants say that they have produced some responsive documents relating to that fund, but not all.  The Plaintiffs' motion is therefore granted as to Request Nos. 7, 8, 15, 16, 17, 18, and 25 to the extent that those requests seek documents related to the Small Cap Fund, but denied to the extent that they seek documents related to other funds.

4.      Requests seeking *"documents regarding the roles, responsibilities, and training of individuals associated with and/or responsible for the Plan."*  (Request Nos. 9, 10, 12, 13.)   In Request No. 9, the Plaintiffs sought production of "[a]ny documents or communications identifying or concerning the Plan's fiduciaries and service providers, their respective roles, responsibilities, duties, or obligations responsibilities [*sic*] to the Plan and its participants."  (Ex. 6 to Mot., at 16.)  Request No. 10 sought "[a]ll documents, communications or other materials identifying or concerning the Plan's dealings with any parties in interest and any related policy, process, or measures adopted or undertaken by the Plan's fiduciaries to address, prevent, or mitigate the risk of any potential conflicts of interest or prohibited transactions arising therefrom."  (*Id.* at 17.)  Request No. 12 sought production of "[a]ny documents concerning the Plan-related duties and/or responsibilities of any Voya employee, committee, or sub-committee member during the Class Period, aside from the Plan's fiduciaries."  (*Id.* at 20.)  And in Request No. 13, the Plaintiffs asked for "[a]ny documents or communications regarding the delegation of any fiduciary duties by any Plan fiduciary during the Class Period."  (*Id.* at 22.)

The Plaintiffs say that each of these four requests is relevant to both the surviving fiduciary duty claims and the prohibited transaction claims.  (Pls.' Memo. at 16.)  Their argument is underdeveloped, and it consists of only two sentences.  (*Id.*)  In response, the Defendants say that they have produced some documents, but the Plaintiffs "have not specified during a meet and confer . . . how Defendants' production is insufficient given the remaining live issues in this case."  (Defs.' Memo. at 26-27.)  Their discussion of the relevance of the four requests is even shorter than the Plaintiffs':  they say that "Plaintiffs' bald assertion that '[t]hese documents . . . are relevant to Plaintiffs' pursuit of the Surviving Claims' is conclusory and does not provide a reasoned basis for Plaintiffs' position."  (Defs.' Memo. at 27 n.24.)

20

Having examined the requests, the Court concludes that Request Nos. 9, 12, and 13 are relevant to the remaining fiduciary duty claims and, therefore, should be limited to the Small Cap Fund. Request No. 10, by contrast, is relevant to the prohibited transaction/party in interest claim and should not be so limited. Because the Defendants have not supported any of their other objections—and, in particular, have not provided an affidavit or other evidence that would support an undue burden or lack-of-proportionality objection—the Court will order compliance on these terms.

5.    *Requests seeking "documents regarding bids, fund alternatives, and removal of funds from the Plan."* (Request Nos. 19, 20, 21, 22, 23, 24, 26, 27, 28.) Most of the requests in this category inquire about prudent management of the Plan and, therefore, are relevant to the fiduciary duty claim. (*See, e.g.,* Req. No. 21, Ex. 6 to Mot., at 32 (seeking "[a]ny documents that discuss the process used to select, monitor, retain, remove, and/or replace any Plan investment options during the Class Period"); Req. No. 28, Ex. 6 to Mot., at 42 (seeking "[a]ny notes taken in connection with any meeting regarding any Plan investment options that took place during the Class Period in which any Defendant or other Plan fiduciary participated").) Production should therefore be limited to those responsive documents that relate to the Small Cap Fund. The Defendants say that they have produced some such documents, but they do not say that they have produced them all. (Defs.' Memo. at 27.) The Court will direct them to do so.

Three of the nine requests in this category are relevant to the prohibited transactions claim. The Defendants rely on at least three statutory exemptions from ERISA's prohibited transaction rules. (*See* Ans., ECF No. 63, at 84 (pleading as an affirmative defense that "Plaintiffs' claims are barred in whole, or in part, by ERISA § 408, and the statutory, class, and other exemptions granted by the Secretary of Labor"); Memo. of L. in Supp. of Mot. for J. on the Pleadings, ECF No. 70-1

at 4("Defendants maintain that the party-in-interest transactions identified by Plaintiffs are exempted by . . . 29 U.S.C. § 1108(b)(5) . . . 29 U.S.C. § 1108(b)(2) . . . [and] 29 U.S.C. § 1108(c)(2)[.]").  Each of these exemptions requires that the compensation paid to the party in interest be "reasonable."  *See* 29 U.S.C. §§ 1108(b)(2), -(b)(5), -(c)(2).  Request No. 22 sought production of "[a]ny reports, evaluations, analyses, or presentations provided to any Defendant or other Plan fiduciary regarding the fees for any administrative services provided to the Plan and/or Plan participants at any time during the Class Period."  (Req. No. 22, Ex. 6 to Mot., at 34.)  Request No. 23 sought "[a]ny documents relating to the process used by any Defendant or other Plan fiduciary to monitor the reasonableness or competitiveness of services provided to the Plan and any fees or compensation associated with the provision of such services."  (Req. No. 23, Ex. 6 to Mot., at 35.)  And Request No. 27 sought production of "[a]ny documents or communications regarding any potential alternatives to, or replacements of, individuals or entities providing services to the Plan[.]"  (Req. No. 27, Ex. 6 to Mot., at 40.)  These three requests probe the reasonableness of the compensation paid, and they are therefore relevant to the prohibited transactions claim.  The Defendants have proffered no evidence that these requests are unduly burdensome or disproportionate, and they will therefore be directed to comply with them, without limitation to the Small Cap Fund.

6.    *Requests seeking "documents regarding meetings and decisions of those responsible for monitoring the Plan."*  (Request Nos. 29, 31, 34.)  The Plaintiffs describe Requests 29, 31, and 34 as seeking "documents regarding meetings and decisions of those responsible for monitoring the Plan."  That is an accurate description of Request No. 31, which sought production of "[a]ny documents or communications evincing any meetings held or had between any of the Plan's fiduciaries and the service providers, whether formal or informal."  (Req. No. 31, Ex. 6 to

Mot., at 46.)  The Plaintiffs say that documents responsive to this request are "likely to show . . . any compensation [the service providers] received from Plaintiffs and the Plan" (Pls.' Memo. at 18), and the Defendants' opposition memorandum does not say otherwise.  (Defs.' Memo at 27.) Because Request No. 31 is relevant to the prohibited transaction claim, the Court will direct the Defendants to comply with it, without limitation to the Small Cap Fund.

The Plaintiffs' description is less accurate with respect to Request No. 29.  That request is broader than "meetings" and "decisions"; it inquires after every document relating to any committee or board in which any Defendant participates, so long as the board or committee was "established or sponsored by any third-party service provider or party in interest to the Plan." (Req. No. 29, Ex. 6 to Mot., at 43.)  Yet despite the inaptness of the Plaintiffs' description, the Court concludes that this request seeks information relevant to the prohibited transaction claim, since it explores the relationship between the Defendants and their counterparties in those transactions.  The Court will direct the Defendants to comply with this request.

The Plaintiffs' description is particularly inaccurate with respect to Request No. 34.  That request sought production of "[a]ny other documents, communications, analyses and/or other materials generated, considered, and/or procured by any of the Plan's fiduciaries in the course of exercising their fiduciary duties, obligations, and decision-making with respect [to] the Plan's administration and/or investment offerings."  (Req. No. 34, Ex. 6 to Mot., at 50.)  This is much, much broader than "meetings" and "decisions," and it is essentially indistinguishable from a demand for production of "all documents concerning the Plan."  A motion to compel compliance with such a facially overbroad request can be denied even where, as here, the responding party did not support its undue burden objection with an affidavit.  *All-Star*, 2022 WL 16901999 ("[T]he Court does not need an affidavit to know that, in asking for substantially all information and

documents related to [a bus company's] vehicles, real estate, operations, employee job responsibilities, and environmental compliance efforts . . . [the requesting party] has requested production of a significant percentage of all the documents the defendants created over the past seven years."); *In re Kidd*, 2020 WL 5594122, at \*11-12 (denying motion to compel, even where responding party failed to submit an affidavit, because the requests "sweep in . . . all manner of organizational documents").   The Court sustains the Defendants' overbreadth and lack-of-proportionality objections with respect to Request No. 34.

7.    *Requests seeking "documents Defendants intend to rely upon."*  (Request Nos. 36, 37.)  In Request No. 36, the Plaintiffs sought production of "[a]ny documents identified or referred to in Defendants' Answer to the Complaint or Defendants' Initial Disclosures."  (Req. No. 36, Ex. 6 to Mot., at 51.)   In Request No. 37, the Plaintiffs sought "[a]ny documents . . . on which Defendants intend to rely as evidence or use in any depositions."  (Req. No. 37, Ex. 6 to Mot., at 52.)  They say they need these documents "to understand the basis for Defendants' defenses and to prepare for any depositions."  (Pls.' Memo. at 18.)

The Defendants do not claim that responsive documents would be irrelevant—nor could they, given that the requests inquired after documents that the Defendants themselves identified. (Defs.' Memo. at 27–28.)  And in their brief, they do not attempt to support the overbreadth, vagueness, and lack-of-proportionality objections that they asserted in their Rule 34 responses. (*Id.*; *see also* Ex. 6 to Mot., at 51–52.)   Instead, they again say that they have "produced documents"—some documents, not all—and they criticize the Plaintiffs for failing to explain why this partial production "is insufficient given the remaining live issues in this case."  (Defs.' Memo. at 28.)  But this is not a proper objection, for the reasons previously discussed.  The Court will order the Defendants to comply with Request Nos. 36 and 37.

###### C.    Interrogatories

The Plaintiffs next seek an order compelling the Defendants to revise their interrogatory responses.  (Mot. at 1.)  Although they served five interrogatories (ECF No. 93-9), and although the text of their requested order would encompass all five (*see* Mot. at 1), their brief specifically addressed only three.  (Pls.' Memo. at 23–29.)   Interrogatory No. 1 asked the Defendants to "[i]dentify all individuals and/or entities" who served as fiduciaries of the Plan, and to describe their "roles, functions, or responsibilities." (*Id.* at 24.)  Interrogatory No. 2 requested identification of "all individuals and/or entities that were parties-in-interest to the Plan" during the relevant period.  (*Id.* at 26.)   Interrogatory No. 4 asked the Defendants to identify "each person who participated in any decision(s) . . . relating to the selection, retention, removal, and/or replacement of any investment product or fund[.]" (Ex. 7 to Pls.' Memo., ECF No. 93-9, at 4.)  The Defendants identified only entities in their responses to these interrogatories; they did not identify a single individual. (Ex. 8 to Pls.' Memo.)  The Plaintiffs seek an order compelling complete answers— that is, answers that disclose any responsive individuals as well as responsive corporate entities. (Pls.' Memo. at 25, 28–29.)

In their Opposition, the Defendants do not dispute that the Plaintiffs are entitled to this information.  (Defs.' Memo. at 31–32.)  They instead say that, in one of their subsequent meet-and-confer letters, they exercised their option under Rule 33(d) and pointed the Plaintiffs to the documents from which the names of the relevant individuals could be ascertained.  (*Id.*; *see also* Corrected Ex. 15 to Pls.' Memo., ECF No. 96.)  They therefore argue that requiring them to do "[a]nything further is neither relevant nor proportional to the needs of this case."  (Defs.' Memo. at 32.)

The Court disagrees, for two principal reasons. First, an interrogatory answer that invokes Rule 33(d) must, like any other answer, be signed under oath by the person who is providing it. *See* Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."); *Geiger v. Z-Ultimate Self Defense Studios, LLC*, No. 1:14-cv-00240 (REB) (NYW), 2015 WL 3396154, at *7 (D. Colo. May 26, 2015) (requiring answer that invoked Rule 33(d) to "be signed under oath by the individual(s) providing the information"). Invoking the rule in an unsworn letter that is signed by counsel rather than by the party is insufficient. *Cf. Hansel v. Shell Oil Corp.*, 169 F.R.D. 303, 307 (E.D. Pa. 1996) (observing that a written statement by counsel "does not comply with Rule 33 because it is not under oath"). Second, the Defendants' claim to have made a complete response apparently relies on a construction of the phrase "and/or" that is neither tenable nor consistent with this Court's rules. (*See* Corrected Ex. 15 to Pls.' Memo., ECF No. 96, at 4) (contending that an entities-only response fully answers an interrogatory that sought identification of "individuals and/or entities")); D. Conn. L. Civ. R. 26(d)(2) ("The connectives 'and' and 'or' shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope."). The Court will order the Defendants to provide complete responses to Interrogatories 1, 2, and 4.

### D.    Depositions

Finally, the Plaintiffs seek an order compelling the Defendants "to produce additional [deposition] witnesses as noticed[.]" (Pls.' Memo. at 29.) The Plaintiffs noticed the depositions of ten individual fact witnesses under Rule 30(b)(1), and they noticed the depositions of each of the seven Defendant entities under Rule 30(b)(6), for a total of seventeen examinations. (*Id.*; *see also* Exs. H–N to Defs.' Opp'n, ECF Nos. 99-9–99-15.) The Defendants objected on several

grounds, including that the notices "exceed[ed] the 10-deposition limit imposed by Rule 30(a)(2)(A)(i)." (E-mail from W. Delany to R. Doriott Dominguez *et al.*, May 13, 2024, Ex. F. to Defs.' Opp'n, ECF No. 99-7.) The Defendants also pointed out that the parties had "indicated they would adhere to" the ten-deposition limit in their Rule 26(f) report. (*Id.*; *see also* Rule 26(f) Rpt., ECF No. 67, at 6.) The Plaintiffs acknowledge this agreement, but they contend that "extensive deposition discovery" has become necessary because of the Defendants' subsequent "campaign of discovery obstruction." (Pls.' Memo. at 30.)

The legal principles governing this dispute are well-settled. "Absent leave of court, Rule 30 of the Federal Rules of Civil Procedure presumptively limits the number of depositions to ten per side." *Parimal v. Manitex Int'l, Inc.*, No. 3:19-cv-01910 (MPS) (SALM), 2021 WL 1976311, at *1 (D. Conn. May 18, 2021) (citing Fed. R. Civ. P. 30(a)(2)(A)(i)). "The purpose of that rule is to enable courts to maintain a tighter rein on the extent of discovery and to minimize the potential cost of wide-ranging discovery." *Id.* (quoting *RxUSA Wholesale, Inc. v. McKesson Corp.*, No. 2:06-cv-04343 (DRH) (AKT), 2007 WL 1827335, at *2 (E.D.N.Y. June 25, 2007)) (brackets omitted). "A court may, however, increase the number of depositions when it is consistent with the principles of Rule 26." *Id.* (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Hicks, Muse, Tate & Furst, Inc.*, No. 1:02-cv-01334 (SAS), 2002 WL 1822738, at *2 (S.D.N.Y. Aug. 8, 2002)). In particular, "courts have looked to Rule 26(b)(2) as setting forth the principles guiding the Court's discretion." *United States Secs. & Exch. Comm'n v. Ahmed*, No. 3:15-cv-00675 (JBA), 2018 WL 1541902, at *1 (D. Conn. Mar. 29, 2018) (quoting Fed. R. Civ. P. 30(a)(2)). That rule directs courts to limit the extent of even relevant discovery if, among other things, "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" Fed. R. Civ. P. 26(b)(2)(C)(i).

Applying these principles, courts often deny motions for leave to exceed the presumptive limit "until the moving party has exhausted the ten depositions permitted as of right[.]" *Gen. Elec. Co. v. Indem. Ins. Co. of N. Am.*, No. 3:06-cv-00232 (CFD) (TPS), 2006 WL 1525970, at *2 (D. Conn. May 25, 2006). The thinking underlying these cases is that, until the moving party takes at least some (if not all) of its initial ten depositions, it cannot show that the eleventh is not unreasonably cumulative or duplicative. *E.g.*, *id.*; *see also Parimal*, 2021 WL 1976311 at *2 (stating that "the Court cannot ascertain whether the testimony sought from certain witnesses would be unreasonably cumulative or duplicative[,]" in part because "plaintiff has not yet exhausted his presumptive limit of ten depositions").

In this case, the Plaintiffs have not yet shown an entitlement to eleven depositions, let alone seventeen. So far as the record discloses, they have yet to take even one. Moreover, the Defendants have evidently offered to produce a single Rule 30(b)(6) witness whose testimony would bind more than one corporate entity. (E-mail from W. Delany to R. Doriott Dominguez *et al.*, May 13, 2024, Ex. F. to Defs.' Opp'n, ECF No. 99-7.) Against that backdrop, the Plaintiffs have failed to show that the additional depositions would not be unreasonably cumulative or duplicative. The Court will therefore deny their motion to the extent that it seeks an order directing the Defendants to produce the seventeen witnesses as noticed. The denial is without prejudice to renewal after the Plaintiffs take their ten depositions.

### III.    CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion to Compel (ECF No. 93) is granted in part and denied in part. It is granted to the extent that the Defendants are ordered to:

A.    Produce all non-privileged documents responsive to Request for Production Nos. 1, 2, 3, 4, 5, 6, 10, 22, 23, 27, 29, 30, 31, 32, 33, 36, or 37;

B.     Produce all non-privileged documents that both:

    1.     are responsive to Request for Production Nos. 7, 8, 9, 12, 13, 15, 16, 17, 18, 19, 20, 21, 24, 25, 26, or 28; and

    2.     relate to the Voya Small Cap Growth Trust Fund;

C.     Provide complete answers to Interrogatories 1, 2, and 4 in the Plaintiffs' First Set of Interrogatories; and

D.     For any document or interrogatory response withheld under a claim of attorney-client privilege, work product protection, or other applicable privilege or protection, the Defendants shall serve a privilege log meeting the requirements of D. Conn. L. Civ. R. 26(e).

The Defendants shall comply with this order by April 30, 2025.  *See* D. Conn. L. Civ. R. 37(d) (permitting courts to depart from the default compliance date of fourteen days).

The Court has carefully considered all the arguments and evidence put forward by the Plaintiffs, and has concluded that they are entitled to no other relief on the current record.  To the extent that the Plaintiffs' Motion to Compel has not been granted in the foregoing paragraphs, it is denied.  With respect to their request to exceed Rule 30(a)(2)(A)(i)'s presumptive limit of ten depositions per side, the denial is without prejudice to renewal at a later stage of the case.

This is not a recommended ruling.  It is a ruling by a Magistrate Judge on a "nondispositive motion[ ] . . . relating to discovery," D. Conn. L. Civ. R. 72.1(C)(2), and as such it is reviewable pursuant to the "clearly erroneous" statutory standard of review. See 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Conn. L. Civ. R. 72.2(b).  It is an order of the Court unless reversed or modified upon timely objection under Local Rule 72.2(a).

So ordered this 31st day of March, 2025, at Hartford, Connecticut.

*/s/ Thomas O. Farrish*
_____
Hon. Thomas O. Farrish
United States Magistrate Judge